IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO – EASTERN DIVISION

| | |
|---|---|
| Ronald S. Gross<br>26350 Bernwood Rd.<br>Beachwood, OH 44122<br><br>MGO PREMFIN MASTER, LLC<br>C/O Jeanine Solomon<br>24400 Chagrin Blvd., Suite 310<br>Beachwood, OH 44122,<br><br>RSG INSURANCE, LLC<br>C/O Jeanine Solomon<br>24400 Chagrin Blvd., Suite 310<br>Beachwood, OH 44122,<br><br>MOSKAL GROSS ORCHOSKY INC.<br>24400 Chagrin Blvd., Suite 310<br>Beachwood, OH 44122,<br><br>             Plaintiffs,<br><br>  v.<br><br>Pacific Life Insurance Company<br>Attn: Legal<br>6750 Mercy Rd.<br>Omaha, NE 68106,<br><br>Primis Bank<br>10900 Nuckols Rd., Ste. 325<br>Glenn Allen, VA 23060,<br><br>Cool Springs Financial Group, LLC<br>6700 Tower Circle, Suite 300<br>Franklin, TN 37067,<br><br>KJMac LLC dba Cool Springs Financial<br>Group Houston<br>C/O John M. McDonough<br>18300 Strack Dr., Ste. 400 | Case No.:<br><br>JUDGE<br><br>COMPLAINT |



Spring, TX 77379

John McDonough
111 Lake Sterling Gate Dr.
Spring, TX 77380,

Sheran LaCaze
2200 Post Oak Blvd., Suite 1550
Houston, TX 77056,

Steven Gleicher
158 Wayne Street, Apt. 426A
Jersey City, New Jersey 07302

JOHN DOES (A-Z),

        Defendants.

Now come Plaintiffs Ronald S. Gross ("Mr. Gross"), MGO PREMFIN MASTER, LLC ("Master LLC"), and RSG INSURANCE, LLC ("RSG LLC") (Mr. Gross, Master LLC and RSG LLC, collectively "Plaintiffs"), by and through counsel, with claims against the above-captioned defendants as follows:

## NATURE OF THE DISPUTE

1. This case arises from Defendant Cool Springs', Defendant Cool Spring Houston's, Defendant McDonough's, Defendant LaCaze's, and Steven Gleicher's (all defined below) false representations and omissions in connection with the fraudulent sale of premium-financed "springing" stranger-owned life insurance ("STOLI") policies where a third-party collateral firm ("Collateral Firm") was guaranteed to step into the shoes of the Plaintiffs after 1 year and a day of the policy's effective date in order to subvert underwriting scrutiny (the "Deal").

2. At all times relevant herein, Defendant PacLife (as defined below) was vicariously liable for the actions of its agents Defendant Cool Springs, Defendant Cool Springs Houston, Defendant McDonough, and Defendant LaCaze, and acted recklessly or with willful blindness regarding the

COMPLAINT                                               p. 2



details and nature of the Deal because the Deal, and other deals like it, made substantial profits for Defendant PacLife.

3. Put simply, the Defendants induced Mr. Gross to buy life insurance policies that were roughly two times his pretax income, with a death benefit that was 150% of his net worth—an absurd imbalance that any reasonable insurance broker and insurance company would know is unlawful.

4. Further, Defendant Primis (as defined below) was a bank that financed the premiums associated with the Deal and was likewise vicariously liable for the actions of its agent, Steven Gleicher, and acted recklessly or with willful blindness regarding the details and nature of the Deal because the Deal, and other deals like it, made substantial profits for Defendant Primis.

5. Defendants Cool Springs, Cool Springs Houston, McDonough, LaCaze, and Gleicher served as the sole point of contact for Plaintiffs, centrally coordinating the Deal in all aspects, including without limitation: (i) making detailed pitches and illustrations that Plaintiffs would enjoy the "guaranteed" benefits of a zero-risk investment in a life insurance policy that would not require any personal expenditures after one year and a day; (ii) filling out misleading financial disclosures and loan applications on behalf of Plaintiffs for submission to Defendants Primis and PacLife to inflate Plaintiffs' net worth and liquidity; (iii) creation of the limited liability companies that would be the beneficiaries of the policies issued pursuant to the deal and which would be used to sell membership interests to the Collateral Firm after one year and a day; and (iv) acting as the only "gatekeeper" that would ensure the success of the Deal even when Plaintiffs began to question the Deal's viability toward the end of the first year.

6. Only one of two things may be true: (i) the Defendants incorporated or intended to incorporate a Collateral Firm into the Deal, which made it an unlawful STOLI transaction; or (ii) in the event



that a Collateral Firm was not incorporated or intended to be incorporated into the deal, Defendants engaged in outright fraud by inducing Mr. Gross to consummate this transaction with a false promise that a Collateral Firm would step into his shoes to pay premiums he knew he could not possibly afford on his own. Importantly, the discovery of these facts by Mr. Gross was only made in January 2024 because of the Defendants ongoing false representations through the entirety of 2023 ensuring him that they had a "plan" and just needed time to secure a Collateral Firm.

7. This complaint seeks the following relief: recission of the loan, recission of the insurance policy, compensatory and punitive damages, attorneys' fees, costs and any other relief this Court deems proper.

## THE PARTIES

8. Plaintiff Ronald S. Gross is an individual residing at 26350 Bernwood Rd., Beachwood, OH 44122 ("Mr. Gross).

9. Plaintiff MGO PREMFIN MASTER, LLC is an Ohio limited liability company that was organized by an agent of Defendant Cool Springs, with its registered agent Jeanine Solomon located at 24400 Chagrin Blvd., Suite 310, Beachwood, OH 44122 ("Master LLC").

10. Plaintiff RSG INSURANCE, LLC is an Ohio limited liability company that was organized by an agent of Defendant Cool Springs, with its registered agent Jeanine Solomon located at 24400 Chagrin Blvd., Suite 310, Beachwood, OH 44122 ("RSG LLC").

11. Plaintiff MOSKAL GORSS ORCHOSKY INC. is an Ohio corporation with its principal place of business located at 24400 Chagrin Blvd., Suite 310, Beachwood, OH 44122 ("MGO").



12. Defendant Pacific Life Insurance Company is a Nebraska insurance company with its principal place of business located at 6750 Mercy Rd., Omaha, NE 68106 ("Defendant PacLife").

13. Defendant Primis Bank is a Virginia-charted bank with its principal place of business located at 10900 Nuckols Rd., Ste. 325, Glenn Allen, VA 23060 ("Defendant Primis").

14. Defendant Cool Springs Financial Group, LLC is a Delaware limited liability company with its principal place of business located at 6700 Tower Circle, Suite 300, Franklin, TN 37067 ("Defendant Cool Springs").

15. Defendant KJMac LLC dba Cool Springs Financial Group Houston is a Texas limited liability company with its registered agent located at John M. McDonough, 18300 Strack Dr., Ste. 400, Spring, TX 77379 ("Defendant Cool Springs Houston").

16. Defendant John McDonough is an individual who resides at 111 Lake Sterling Gate Dr., Spring, TX 77380 ("Defendant McDonough").

17. Defendant LaCaze is an individual who can be served at her place of business located at 2200 Post Oak Blvd., Suite 1550, Houston, TX 77056 ("Defendant LaCaze").

18. Defendant Steven Gleicher is an individual who resides at 158 Wayne Street, Apt. 426A in Jersey City, NJ 07302 ("Defendant Gleicher").

19. Defendants John Does (A-Z) are yet-to-be named individuals and entities whose identity is not presently known but may be uncovered in connection with discovery in this action.

## VENUE AND JURISDICTION

20. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between all Plaintiffs and all Defendants in this case, and the amount in dispute in this action, exclusive of interest and costs, exceeds the sum of $75,000.



21. This Court has personal jurisdiction over all Defendants because all the Defendants transacted business in the State of Ohio.

22. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to the lawsuit occurred in this district and the insurance laws and regulations of the State of Ohio apply to the transactions disputed herein.

## GENERAL ALLEGATIONS

23. Defendants Cool Springs, Cool Springs Houston, McDonough, and LaCaze are collectively referred to herein as "Defendants Cool Springs."

24. This dispute stems from Defendants Cool Springs' false representations in connection with the sale and execution of the Deal.

25. Mr. Gross is an executive and business owner residing in Northeast Ohio with companies engaged in managing 401K retirement accounts as well as individual investment advisory services.

26. RSG LLC and Master LLC are entities that were created by an agent of Defendants Cool Springs to hold the beneficial interests of certain premium-financed life insurance policies in order to convey a portion of the beneficial interests to a Collateral Firm with no insurable interest in the life of Mr. Gross or his companies.

27. Without fully informing Mr. Gross as to the entities' purposes, Defendants Cool Springs knew that these entities were necessary to skirt at least two important categories of law and regulation:

    a. Unfair and Deceptive Trade Practices in the Business of Insurance – Ohio Rev. Code §§ 3901.19-3901.26.



      i. Pursuant to Ohio Admin. Code § 3901-9-04, all insurance applications for life insurance in Ohio must include questions related to the unlawful sale of stranger-owned life insurance that are prohibited by Ohio Rev. Code § 3916.05(B). Any violation of these regulations subjects the insurer to liability under Ohio's unfair and deceptive trade practices laws.

  b. Federal Truth In Lending Act – 15 U.S.C. § 1601, et seq. ("TIA")

      i. The federal TIA regulates the deceptive issuance of loans to natural persons only and by creating the entities, Defendants Cool Springs and Defendant Primis knew they could avoid the additional liabilities associated with "consumer" loan laws and regulations.

28. In or about December 2019, Defendant McDonough pitched Mr. Gross on the Deal, which only in hindsight and discovery of the fraul, was too good to be true.

29. The Deal, as presented by Defendant McDonough in the latter part of 2019 involved the following as captured by contemporaneous notes taken by Mr. Gross and attached hereto as *Exhibit 1*.

  a. Representations that Defendant Cool Springs and Defendant McDonough executed more than $8 billion in transactions, all without clients ever having to write a premium check.

  b. Representations that a bank would fully fund the premium for an indexed life insurance policy through a loan facility.

  c. Representations that a third-party Collateral Firm would provide all of the collateral needed for the loan to the bank to cover the shortfall between the collateral and the cash



surrender value ("CSV") of the policy in exchange for beneficial interests in the policy's long-term CSV and/or death benefit.

d. Representations that Mr. Gross would need to create a special purpose entity, namely a limited liability company, to hold the policy.

30. After this December presentation, Mr. Gross responded to Defendant with a series of questions via email on December 4, 2019, to which Defendant McDonough responded as follows:

Mr. Gross: "How does collateral company (that puts up collateral) work[?]"

McDonough: "For an upfront 5% of first year premium, they loan you the collateral needed plus charge 7% annually of the loan they are providing for the first 6 years. Then if you choose to continue year 6+ then the loan converts from 7% annual fee to <u>50% of death benefit irrevocably by them becoming 50% member in the LLC</u>." (emphasis added).

[ . . . . ]

Mr. Gross: "Can the illustration be run with worst case scenario (no earnings on csv for entire period)[?]"

McDonough: "We are already illustrating 0% interest crediting for the first 7 years. No earnings for ever [sic] is unrealistic and has never happened historically.

[. . . .]

Mr. Gross: "Can the illustration be run with the collateral company showing how the concept works?

McDonough: "We can walk you through it. <u>We do not illustrate it</u>." (emphasis added).

 

31. An example of the illustration (not including the Collateral Firm portion of the pitch deck that is never distributed to avoid an evidentiary trail) provided by McDonough on behalf of Defendants Cool Springs is attached hereto as *Exhibit 2* showing a scenario using Zurich as the insurance carrier.

32. On information and belief, Zurich insurance stopped working with Defendants Cool Springs sometime between December 2019 and October 2021.

33. In response, Defendants Cool Springs shifted their deal work to Defendant PacLife.

34. Defendant McDonough's checkered history in the insurance industry was known to, or reasonably available to Defendant PacLife upon a basic search.

35. For example, the following publicly available information was available to Defendant PacLife when it appointed Defendant McDonough as its agent:

    a. 3 SEC disclosures, including two actions that resulted in final agency disciplinary action and one that was settled with a customer, SEC Investment Adviser Public Disclosure for Defendant McDonough, https://adviserinfo.sec.gov/individual/summary/4425667/ (last visited Dec. 11, 2024); and

    b. FINRA sanctions resulting in suspensions and fines, Broker Check Report for Defendant McDonough, *available at:*

       https://linkprotect.cudasvc.com/url?a=https%3a%2f%2ffiles.brokercheck.finra.org%2fin dividual%2findividual_4425667.pdf&c=E,1,lGMS5b4Fvs2ohAHNdo4-7RCQlpiUwvb0AQ2lvjw5ukNRmotU98UiogkiyItz8os3R98_Q6G5aKNUT2PPozXzHq GGyzH6BuNWJbVzxHglvw0vuXH8_ra1n8I,&typo=1&ancr_add=1.

 

36. In or about August 2020, Defendant LaCaze introduced Mr. Gross to Janis Howard via email stating that he needed to establish a few single-purpose LLCs in Ohio and indicated to Mr. Gross that Janis Howard "is our 'go to' in establishing LLCs across the county" for Defendants Cool Springs' clients.

37. Janis Howard was not an attorney but worked for the law firm of Middleton Reutlinger located in Louisville, KY.

38. On August 30, 2020, Janis Howard formed Master LLC and RSG LLC on behalf of Mr. Gross and also drafted operating agreements for Mr. Gross to sign.

39. Due to the COVID pandemic, little to no activity occurred with respect to the Deal until Mr. Gross emailed Defendant LaCaze on October 1, 2021, inquiring about the status of the Deal and Defendant LaCaze responded stating that Defendants Cool Springs had "a lot of unexpected changes recently with carriers."

40. On October 13, 2021, Defendant LaCaze emailed Mr. Gross the following: "What we currently know to be true with the processing of business at Pacific Life: Cases at or above the $20mm DB [death benefit] mark go through additional financial scrutiny. This means they dig into a client's financial position on all aspects, including income and liquidity. John's [Defendant McDonough] recommendation is as follows: 1. Proceed with the Pac Life case at a total of $19mm death benefit, which will get us just below the extra scrutiny threshold[.]" (emphasis added).

41. The foregoing allegations in paragraph 40 evidence Defendants Cool Springs' knowledge that Mr. Gross lacked the income and liquidity for the Deal and they knowingly structured the Deal in a way that subverted Defendant PacLife's underwriting requirements.



42. Throughout the first half of 2022 Defendants Cool Springs' centrally managed every aspect of the Deal, carefully avoiding any direct contact between Mr. Gross and Defendant Primis or Defendant PacLife.

43. On June 14, 2022 Defendants Cool Springs sent Mr. Gross an email attaching Defendant Primis' credit application, indicating "[f]or your convenience, we have prefilled the application and just need your wet signatures."

44. Defendant Primis knowingly allowed Defendants Cool Springs to complete its loan documents without verifying the factual basis of the applicant and is part of a pattern where Defendant Primis, including through its agents, purposefully avoided "know-your-customer" regulations in order to push through profitable and low risk premium finance deals with Defendants Cool Springs, and presumably others.

45. Accordingly, Defendant Primis underwrote the loan for the Deal using information solely compiled and provided by Defendants Cool Springs.

46. Shortly after the credit application was made, Defendants Cool Springs sent Mr. Gross a loan commitment letter from Defendant Primis dated June 27, 2022, a copy of which is attached hereto as *Exhibit 3*, and is signed by Defendant Primis' Senior Vice President Steven Gleicher.

47. The loan commitment letter from Defendant Primis makes no reference to the third-party Collateral Firm in reference to the collateral that was guaranteed to secure the loan despite Defendants Cool Springs' and Steven Gleicher's knowledge of the Deal's entire structure.

48. On July 12, 2022, Mr. Gross signed the loan package from Defendant Primis via docusign (the "Fraudulent Loan") for an initial principal sum of $1,869,496 and a $186,981 money market deposit from Mr. Gross ("Gross Payment 1"), a copy of which is attached hereto as *Exhibit 4*.



49. The Fraudulent Loan compiled by Defendants Cool Springs and Defendant Primis contain the following misrepresentations and omissions, each of which the Defendants knew were untrue and material at the time of the loan:

   a. No reference is made to the Collateral Firm that was an integral part of the Deal every step of the way.

   b. The Promissory Note states "Borrower understands that the Life Policy is not an investment[.]" Ex. 4 at 9.

   c. Beneficial Ownership Disclosures from Master LLC and RSG LLC without any reference to the contemplated membership interest transfer to the Collateral Firm after 1 year and 1 day. *Id.* at 25.

50. The next day, Mr. Gross signed insurance contracts on behalf of Master LLC and RSG LLC with Defendant PacLife via docusign (the "Fraudulent Policies"); Defendant McDonough also signed the Fraudulent Policies as the "producer." *Exhibit 5*.[1]

51. The Fraudulent Policy compiled by Defendants Cool Springs and Defendant PacLife contain the following misrepresentations and omissions, each of which the Defendants knew were untrue and material at the time the policy was bound:

   a. "As the Applicant and/or Policyowner, I represent that the Policyowner and Beneficiary have an insurable interest in the life of the Proposed Insured(s)." Ex. 5 at 98.

---

[1] Due to the voluminous nature of the two policy contracts, only one is attached as Exhibit 5 for RSG LLC. The contract documents for Master LLC are basically identical and can be made available in discovery or upon request of the Court or any party.



    b. Checked "no" for the question "Has any Proposed Insured(s), Policyowner(s) or Applicant entered into, or have made plans to transfer this Policy to a third party as repayment of any premium financing debt?" *Id.* at 101.

    c. Checked the box stating "An illustration was not presented to me" in connection with the sales process for the policy and none of the illustrations made by Defendants Cool Springs were attached to the policy and application. *Id.* at 102.

    d. "The Policy as applied for in this Application will meet my insurance needs and financial objectives based in part upon my age, income, net worth, tax and family status, and any existing insurance policies I own." *Id.* at 109.

    e. "I represent that all parties have an insurable interest in the life of the Proposed Insured." *Id.* at 110.

    f. On behalf of Defendant McDonough, "I further certify that I have also considered the Policyowner's liquidity needs, risk tolerance, and investment time horizon[.]" *Id.*

    g. The acknowledged disclosure that premium financing "is an alternative method of funding and not a tool that may be utilized to purchase needed life insurance that could not otherwise be afforded." *Id.* 128.

52. Following the policy binding and Gross Payment 1, Defendants Cool Springs were paid commissions by Defendant PacLife, and Defendant Primis paid commissions to Steven Gleicher.

53. After a period of time where Mr. Gross had not been informed about the Collateral Firm that was guaranteed to step in on the 366th day of the policy, he emailed Defendant LaCaze in May of 2023, to which she dismissively responded that "We are about a month out from the renewal/collateral convo."

COMPLAINT                                              p. 13



54. On June 11, 2023, emailed Defendant LaCaze inquiring how soon the Gross Payment 1 funds could be released to him, she responded "Once we have collateral replaced, we can have your funds released within 2 weeks."

55. Then began a period of false assurances from Defendants Cool Springs that they were actively working to secure a "new" Collateral Firm and that Mr. Gross should just make additional collateral payments to Defendant Primis to "buy more time."

56. Accordingly, Mr. Gross made the following payments to Defendant Primis before realizing that he had been defrauded the whole time:

    a. July 31, 2023 - $70,000 ("Gross Payment 2")

    b. September 22, 2023 - $20,000 ("Gross Payment 3")

    c. October 30, 2023 - $40,000 ("Gross Payment 4")

57. In or about November 2023, Mr. Gross discovered that the Collateral Firm "guaranteed" to him as part of the Deal may not be in place as promised by Defendants Cool Springs.

58. Between June 2023 and October 2023, a plethora of emails evidencing Defendants Cool Springs' intent to falsely assure Mr. Gross were produced, as well as numerous conversations that were memorialized in contemporaneous notes taken by Mr. Gross.

59. For example, on September 5, 2023, Defendant McDonough sent Mr. Gross an email with multiple avenues that Defendants Cool Springs were pursuing to justify Mr. Gross' continued need to inject cash into Defendant Primis and buy time. *Exhibit 6* ("Amarillo National Bank signing NDA to look at what size deals they could take...premium lender and collateral..texted to check on NDA 9/5. Phone call being scheduled for 9/5 with Comerica Bank (Chris Wrench) who seems to be aggressive on lending...This would be to see if they can take the MFG Guarantee[.]")



60. All of the foregoing assurances were false and intended by Defendants Cool Springs to delay the ultimate reckoning that they faced with respect to the Deal they sold to Mr. Gross and countless others.

61. On January 16, 2024, Mr. Gross received a default notification from Defendant Primis that he did not cure as it was now clear to him that the entire Deal was a fraud from the beginning.

62. Subsequently, the policies with Defendant PacLife were liquidated in favor of Defendant Primis and Mr. Gross received absolutely no benefit in connection with funds he sent to Defendant Primis, totaling approximately $316,981.

## **Count I - Fraud**

(*As to all Defendants*)

63. Plaintiffs reincorporate and re-allege all of the foregoing paragraphs by reference herein.

64. The representations made by Defendants in connection with Fraudulent Policy and Fraudulent Loan were material, including without limitation the representations set forth more particularly in paragraphs 1-7 and 23-62.

65. During negotiation of the Premium Loan Facility, Defendants made affirmative representations to Plaintiffs that Plaintiffs would have no financial obligations or liabilities related to the Premium Loan Facility, or the collateral gap financing.

66. The foregoing representations and omissions by Defendants were made falsely, with knowledge of their falsity, or with such utter disregard and recklessness as to whether they were true or false that knowledge may be inferred.

67. Defendants' material misrepresentations and omissions were made with the intent of misleading Plaintiffs into obtaining life insurance policies that they did not need, nor could they afford.



68. Plaintiffs justifiably relied on Defendants' representations and was unaware of their active concealment.

69. As a direct and proximate result of Defendants' material misrepresentations and omissions and Plaintiffs' reliance thereon, Plaintiffs have suffered damages, including without limitation, Gross Payments 1-4.

## Count II – Negligent Misrepresentation

(*As to all Defendants*)

70. Plaintiffs reincorporate and re-allege all of the foregoing paragraphs by reference herein.

71. Defendants had a duty to provide accurate and non-misleading information to Plaintiffs concerning the Deal (including the Fraudulent Loan and Fraudulent Policy) and its compatibility with Plaintiffs' best interests.

72. Defendants had a concrete pecuniary interest in closing on the Fraudulent Loan and Fraudulent Policy.

73. Defendants breached this duty and supplied misleading information regarding the feasibility of a third-party Collateral Firm actually stepping in to cover Plaintiffs' collateral gap, and that the Deal would be zero risk and "no cost" to Plaintiffs.

74. Plaintiffs justifiably relied upon this misinformation and was induced to enter into the Deal.

75. Defendants negligently made the representations described in this claim.

76. As a direct and proximate result of said negligent misrepresentations, Plaintiffs sustained damages in an amount to be proven at trial.



### Count III – Breach of Fiduciary Duty/Negligence

(*As to all Defendants except Defendants Primis and Gleicher*)

77. Plaintiffs reincorporate and re-allege all of the foregoing paragraphs by reference herein.

78. By virtue of the relationship between Plaintiffs and the Defendants, the Defendants were fiduciaries of the Plaintiffs.

79. As to Defendants Cool Springs, they served as professional advisors and were engaged by Mr. Gross in trust and confidence such that they would provide him with financial planning advice.

80. As to Defendant PacLife, Defendant McDonough acted at all times as an agent of Defendant PacLife and within the scope of his agency relationship; as such, Defendant PacLife is vicariously liable for Defendant McDonough's actions in addition to its own actions to harm Plaintiffs.

81. As fiduciaries, Defendants Cool Springs and Defendant PacLife had a heightened duty of care and were required to put the Plaintiffs' interests ahead of their own and to exercise utmost care in the handling of Plaintiffs' affairs.

82. There are at least four kinds of fiduciary duties owed by the foregoing Defendants to Plaintiffs which the were breached: (a) the duty of care, (b) the duty of loyalty, (c) the duty of full disclosure, and (d) the duty of good faith and fair dealing. Defendants Cool Springs further breached their fiduciary duties by placing themselves in a conflict of interest with Plaintiffs in which the their own economic interests drove their selection of an unsuitable and disastrous insurance policy for Plaintiffs and failure to disclose material facts as outlined above.

83. As a direct and proximate result of said breaches of duty, Plaintiffs sustained damages in an amount to be proven at trial.



**Count IV – Recission**

(*As to Defendant PacLife and Defendant Primis*)

84. Plaintiffs reincorporate and re-allege all of the foregoing paragraphs by reference herein.

85. As set forth herein, Defendant PacLife and Defendant Primis fraudulently induced Plaintiffs to enter into the Fraudulent Policy and Fraudulent Loan, respectively.

86. Accordingly, Plaintiffs are entitled to have the Fraudulent Policy and Fraudulent Loan set aside and held for naught, and that the Plaintiffs recover damages in an amount to be proven at trial.

WHEREFORE: Plaintiffs pray:

   a. As to Counts I-III, for damages to be proven at trial in excess of $25,000, including compensatory and punitive damages, plus reasonable legal fees, interest and costs, and/or such other legal and equitable relief as this Court deems just and proper.

   b. As to Count IV, for recission of the Fraudulent Policy and Fraudulent Loan plus damages to be proven at trial in excess of $25,000, including compensatory damages, plus reasonable legal fees, interest and costs, and/or such other legal and equitable relief as this Court deems just and proper.

Respectfully Submitted,

*/s/ Brian C. Mulhall*
*/s/ Nathan B. Zion*
Brian C. Mulhall (0092673)
Nathan B. Zion (0092316)
MULHALL ZION LLC
5735 State Rd., Suite 100
Cleveland, OH 44134
P: (216) 586-4278
F: (440) 628-3165
Email: brian@bz-llc.com
            nathan@mz-llc.com
*Counsel for Plaintiffs*



**Jury Demand**

Plaintiffs hereby request a trial by a jury of the maximum size permitted by law for all claims so able to be tried.

                    Respectfully Submitted,

                    */s/ Brian C. Mulhall*
                    Brian C. Mulhall, Esq. (0092673)

